ORDERED.

Dated: February 25, 2019

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| JULIE B. ZALLOUM, | ) Case No. 6:17-bk-02329-KSJ |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) |
| JULIE B. ZALLOUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary No. 6:17-ap-00068-KSJ |
| | ) |
| RIVER OAKS COMMUNITY SERVICES ASSOCIATION, INC. et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION RESOLVING ALL ISSUES
BETWEEN DEBTOR AND ASSOCIATION CLAIMANTS**
*(Debtor's Objection to Association Claims 2-1 and 3-1 Overruled;
Final Summary Judgment Granted for Associations on Counts 3, 4, 5, 6 and 9;
Counts 1, 2, and 7 Dismissed)*

Debtor Julie Zalloum helped by her husband, a related trust,[1] and perhaps an attorney who ghost writes their pleadings, has made a mockery of judicial system for years by frustrating the claims of legitimate secured creditors who allegedly hold liens on two homes. Debtor is manipulating the bankruptcy system and wasting the time of numerous appellate and state courts hoping to get two free homes. In this order, intended to stop the Debtor's unjustified quest, after detailing the past litigation and analyzing the Debtor's preposterous arguments, the Court will decide all issues between the Debtor and River Oaks Community Services Association, Inc. and related parties.

In May 2006, the Debtor bought two houses. One is at 1340 Sioux Trail in Enterprise, Florida.[2] The second home, relevant to this Memorandum Opinion, is at 217 River Village Drive in DeBary, Florida (the "River Village House").[3] The River Village House is in a development managed by River Oaks Community Services Association, Inc. ("ROCSA"), a homeowner's association asserting a lien for unpaid assessments of $95,612.19 against the River Village House.[4]

Three other Defendants are related to ROCSA. River Oaks III is a Defendant and ROCSA sub-entity asserting a small lien against the River Village House of $459.63.[5] Defendant Wean & Malchow, P.A. is a law firm who represents ROCSA in both the bankruptcy and state court litigation.[6] Defendant Laura Prevesk is a community service association manager who manages

---

[1] The Court will refer to Julie Zalloum by her full name, Mrs. Zalloum, or the Debtor. The Court will refer to her husband as Sam Zalloum or Mr. Zalloum. The Court will refer to the 283 Bayou Circle Trust dated October 6, 2011 as the "Bayou Trust."
[2] *See generally*, Doc. No. 159 in the Main Case 6:17-bk-2329-KSJ for more information about the Sioux Trail House and its attendant dispute.
[3] Doc. No. 23, ¶ 10 and Exh. A. Debtor filed the exhibits to her Amended Complaint (Doc. No. 23) at separate docket entries. For example, Exhibit A is Doc. No. 24. Exhibit B is Doc. No. 25. The Court will refer to the Exhibit letters only. *See also*, Doc. No. 94, ¶ 7 and Exh. 2. Debtor separately objects to her liability on the mortgage allegedly encumbering the River Village House. For clarity, I will address these issues in a related Memorandum Opinion (to be simultaneously entered) resolving the pending motions between Debtor and the entity that asserts ownership of this debt, US Bank.
[4] Claim No. 2-1.
[5] Claim No. 3-1. ROSCA also has two other sub-entities—River Oaks I and River Oaks II—that are not Defendants.
[6] Doc. No. 97 (foreclosure complaint filed by ROSCA against Julie Zalloum).

the River Oaks development including the River Village House. Unless noted otherwise, when I refer to ROCSA, I intend to reference *all* the ROCSA related Defendants—ROCSA, River Oaks III, Wean & Malchow, and Prevesk.

After ROCSA filed its Motion to Dismiss[7] the Debtor's first Complaint,[8] the Debtor was granted leave to file an amended complaint.[9] Because of the many rulings in prior bankruptcy and state court cases between these parties, which I will discuss in more detail later, the Court encouraged the Debtor and ROCSA to file dispositive pleadings on the claims between them.[10] The parties embraced this request and have filed numerous motions that will allow the Court to resolve all pending issues between the Debtor and ROCSA.

Although the Debtor's Amended Complaint[11] is mis-numbered and confusing, I will use this outline to frame the issues pled by the *pro se* Debtor:

- Count 1: Civil Conspiracy against ROCSA;
- Count 2: RICO Claims against ROCSA;
- Count 3: Waiver of Tender against ROCSA;
- Count 4: Debtor's Objection to Claim 2-1 Filed by ROCSA;[12]
- Count 5: Debtor's Objection to Claim 3-1 Filed by River Oaks III;
- Count 6: Request for a Declaratory Judgment that ROCSA's lien is void on the River Village House;

---

[7] Doc. No. 18.
[8] Doc. No. 1.
[9] Doc. Nos. 22, 23, and 69.
[10] Doc. No. 69.
[11] Doc. No. 23.
[12] Debtor also filed an Objection to Claim 2-1 in the Main Case 6:17-bk-2329-KSJ. Doc. No. 45. ROSCA responded. Doc. No. 48 in the Main Case 6:17-bk-2329-KSJ. The Objection was consolidated with this adversary proceeding for resolution in the Order Scheduling Pending Matters. Doc. No. 88 in the Main Case 6:17-bk-2329-KSJ.

- Count 7: Claim for sanctions against all Defendants under § 105 of the Bankruptcy Code;[13]

- Count 8: Request to determine priority and value liens of ROCSA and the alleged owner of the mortgage encumbering the River Village House (*The Court separately will address Count 8 in a related Memorandum Opinion involving the alleged mortgage holder, US Bank;*) and

- Count 9: Damage claim to recover monies against ROCSA.

The parties have filed cross dispositive motions addressing each count. Debtor filed a series of Motions for Partial Summary Judgment, each addressing a single count or multiple counts of the Amended Complaint.[14] ROCSA filed two similar Motions for Summary Judgment.[15] Both parties filed affidavits to support their positions.[16]

The issues are briefed and ripe for summary judgment as a matter of law, finding no material factual disputes exists, or for dismissal for failure to state a claim. Although the full ruling is explained below, here is a summary to guide the reader. Summary judgment is granted for ROCSA and against the Debtor on Counts 3, 4, 5, 6, and 9 relying on the principles of *res judicata* and collateral estoppel. Counts 1, 2, and 7 are dismissed for failing to state a claim. Claim 8 will be addressed in another Memorandum Opinion. Debtor's Objections to Claims 2-1 and 3-1 are overruled, ROCSA is allowed a claim for $95,612.19, and River Village III is allowed a claim for $ 459.63. Both claims are secured liens encumbering the River Village House.

---

[13] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101, *et seq*.
[14] Doc. No. 174 (Counts 1, 2, 3), Doc. No. 175 (Counts 4 and 5), Doc. No. 176 (Count 6), Doc. No. 177 (Count 7), Doc. No. 178 (Count 8) and Doc. No. 179 (Count 9).
[15] Doc. Nos. 89 and 94. Defendants River Oaks III, Wean & Malchow, P.A., and Laura Prevesk filed a Joinder in support of ROSCA's Motions for Summary Judgment. Doc. No. 103.
[16] Debtor's affidavits and exhibits are located at Doc. Nos. 180, 181, 182, 186. ROSCA's affidavits and notices are located at Doc. No. 90, 95–102.

**Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] The moving party must establish the right to summary judgment.[18] A "material" fact is one that "might affect the outcome of the suit under the governing law."[19] A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20] Once the moving party has met its burden, the nonmovant must set forth specific facts showing there is a genuine issue for trial.[21] Summary judgment allows the Court to review evidence and papers outside of the four corners of the complaint. In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[22]

*Res Judicata* **and Collateral Estoppel**

Many claims asserted by the Debtor against ROCSA are subject to summary judgment based on the doctrines of *res judicata* and collateral estoppel. "The general principle of *res judicata* prevents the relitigation of issues and claims already decided by a competent court. 'Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.' *Res judicata* comes in two forms: claim preclusion (traditional '*res judicata*') and issue preclusion (also known as 'collateral estoppel'). For prior federal decisions, federal preclusion law applies.[23] In sum, "[f]inal [court] orders are not subject to collateral attack, and impermissible collateral attacks include second lawsuits to evade the earlier judgment, or to deny the earlier judgment's

---

[17] Fed. R. Civ. P. 56(a).
[18] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *Find What Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).
[20] *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.
[21] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348 (1986).
[22] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).
[23] *Moore v. Pak*, 402 F. App'x 491, 493 (11th Cir. 2010).

effect."[24] Here, the Court will apply federal preclusion law as there are judgments and opinions from the Bankruptcy Court and the District Court that preclude the Debtor from again re-litigating her same disputes with ROCSA.[25]

The Eleventh Circuit explained the doctrine of *res judicata*: "The doctrine of claim preclusion serves several important policy functions, and the analysis we undertake to measure the identity of claims promotes these ends. One of the chief concerns of *res judicata* is the prevention of inconsistent results."[26] "Ultimately, courts applying *res judicata* seek 'to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim.'"[27]

Under the federal test: "'*Res judicata* applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'"[28] Four elements must be met: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action."[29] If these elements are met, the Court must then determine whether the claim could have been raised in the prior suit.[30] When considering whether the cases involve the same cause of action, the Court evaluates any commonality in the "nucleus of operative facts" of the

---

[24] Case No. 3:09-bk-7921-PMG, Case No. 3:09-ap-614-PMG (order dated June 23, 2017).
[25] *Moore v. Pak*, 402 F. App'x 491, 493 (11th Cir. 2010).
[26] *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1307 (11th Cir. 2010)
[27] *Id.* at 1307-08.
[28] *Moore v. Pak*, 402 F. App'x at 493 (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1358–59 (11th Cir. 1992)).
[29] *Id.* (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001); *See also Russell v. Redstone Fed. Credit Union*, 710 F. App'x 830, 832 (11th Cir. 2017), cert. denied, No. 18-5765, 2018 WL 4190076 (U.S. Nov. 5, 2018) (setting out test for *res judicata*); *Borrero,* 610 F.3d at 1306 (setting out test for *res judicata*)
[30] *Moore v. Pak*, 402 F. App'x at 493.

action.[31] The Eleventh Circuit instructs "[courts should] line up the former and current cases side-by-side to assess their factual similarities."[32]

"Collateral estoppel bars relitigation of an *issue* previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case."[33] "The doctrine of collateral estoppel applies under federal law if the following four factors are met: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding."[34]

### Litigation History and Prior Court Rulings Support Summary Judgment for ROCSA

So, ultimately, the test for *res judicata* or collateral estoppel rests on what was litigated between similar parties and finally decided by prior courts. To interpret the context of these prior decisions, one first must understand the history of the Chapter 7 bankruptcy case filed by Bayou Trust, the involuntary bankruptcy case filed by Sam Zalloum on behalf of Bayou Trust, and the two Chapter 13 bankruptcy cases filed by the Debtor. I briefly will discuss these four cases, but the inescapable conclusion is that the Debtor has made no serious effort to pay the claims of her legitimate creditors. Sam and Julie Zalloum have used these four bankruptcy cases for dilatory purposes to avoid paying the claims of their legitimate secured creditors, including ROCSA.

---

[31] *Borrero,* 610 F.3d at 1308.
[32] *Id.* at 1309.
[33] *In re St. Laurent*, 991 F.2d 672, 675 (11th Cir. 1993), *as corrected on reh'g* (June 22, 1993) (emphasis provided).
[34] *In re Bush*, 232 F. App'x 852, 854 (11th Cir. 2007).

**Bankruptcy Cases of 283 Bayou Circle Trust**. On April 15, 2013, Sam Zalloum filed a Chapter 7 bankruptcy petition on behalf of the 283 Bayou Circle Trust (the "Bayou Trust").[35] Bayou Trust owned a house in the River Oaks development,[36] near the River Village House at issue in this Memorandum Opinion. Stay relief was granted so the secured creditor could proceed with foreclosure.[37] Mr. Zalloum sought appellate review of this ruling, and the District Court affirmed the Bankruptcy Court's order granting stay relief.[38] The District Court questioned why Mr. Zalloum was involved in an appeal of the stay relief order when it stated: "As an initial matter, it is not entirely clear who Mr. Zalloum is or why he is involved in this bankruptcy case or appeal."[39] Zalloum's arguments ultimately were rejected.

Two adversary proceedings were filed in the Bayou Trust bankruptcy case. One adversary proceeding was brought by Mr. Zalloum individually against ROCSA raising issues virtually identical to the issues asserted by Julie Zalloum in this adversary proceeding—that ROCSA is a condominium association, could not levy assessments against homes in the River Oaks development, including the River Village House, and has no valid lien for unpaid assessments.[40] The Bankruptcy Court granted ROCSA's Motion for Summary Judgment finding ROCSA was a homeowner's association, had the legal ability to collect assessments against homes in the River Oaks development, and held a valid, enforceable lien.[41] Mr. Zalloum sought appellate review of the Court's opinion, and the District Court affirmed the Bankruptcy Court.[42] The District Court made a specific finding that Mr. Zalloum's appeal was "meritless and frivolous" and warned Mr.

---

[35] Case No. 6:13-bk-04561-KSJ. The adversary proceeding was filed on July 29, 2013.
[36] The house was located at 283 Bayou Circle, Debary, Florida, hence the name of the trust—283 Bayou Circle Trust. Sam Zalloum and the Bayou Trust apparently co-owned the home.
[37] Doc. No. 109 in Case No. 6:13-bk-04561-KSJ (entered November 23, 2015).
[38] Doc. No. 154 in Case No. 6:13-bk-04561-KSJ (entered September 6, 2016) (District Court Case No. 6:15-cv-2068).
[39] Doc. No. 154, p. 3 in Case No. 6:13-bk-04561-KSJ (entered September 6, 2016).
[40] Adversary No. 6:13-ap-00124-KSJ.
[41] Doc. No. 144 in Adversary No. 6:13-ap-00124-KSJ (entered March 6, 2015).
[42] Doc. No. 188 in Adversary No. 6:13-ap-00124-KSJ (entered November 29, 2016) (District Court Case No. 6:15-cv-540).

Zalloum that "further litigation on this issue may subject him to sanctions."[43] So, here we have a District Court order confirming ROCSA is a homeowner's association entitled to collect assessments against homes in the River Oaks development and to place valid and enforceable liens on homes when a homeowner fails to pay the levied assessment.

Mr. Zalloum also filed another adversary proceeding in the Bayou Trust case against the putative secured creditor holding the mortgage on the Bayou Trust home and its lawyers.[44] This adversary proceeding eventually was dismissed without prejudice.[45] Mr. Zalloum again sought appellate review of the Bankruptcy Court's dismissal order (and other orders the Bankruptcy Court entered on reconsideration motions) and the District Court affirmed.[46] One notes the pattern in Mr. and Mrs. Zalloum using the courts to delay paying their legitimate creditors through litigation and appeals.

But Mr. Zalloum was not yet done with filing bankruptcy cases for Bayou Trust. On March 17, 2014, he filed an *involuntary* Chapter 11 petition **against** the Bayou Trust.[47] This new case was filed while the prior voluntary Chapter 7 case he filed **for** Bayou Trust was still pending and in active litigation. The involuntary petition quickly was dismissed with the Court's admonition to Mr. Zalloum that, if he filed another involuntary petition involving the Bayou Trust, the Court would assess sanctions against him.[48]

**Two Bankruptcy Cases Filed by Julie Zalloum**. Julie Zalloum filed her first Chapter 13 case on April 3, 2013, a few days before Bayou Trust.[49] Debtor's case was dismissed when she

---

[43] Doc. No. 188, p. 7 in Adversary No. 6:13-ap-00124-KSJ (entered November 29, 2016).
[44] Adversary No. 6:15-ap-00153-KSJ.
[45] Doc. No. 35 in Adversary No. 6:15-ap-00153-KSJ.
[46] Doc. No. 64 in Adversary No. 6:15-ap-00153-KSJ (entered February 22, 2017) (District Court Case No. 6:16-cv-1361) (the District Court could not review two of the orders requested because Mr. Zalloum's appeals were untimely, however, the one Order the District Court substantively reviewed was affirmed).
[47] Case No. 6:14-bk-02971-KSJ.
[48] Doc. No. 11 in Case No. 6:14-bk-02971-KSJ (entered April 10, 2014).
[49] Case No. 6:13-bk-04030-KSJ.

failed to timely file an Amended Chapter 13 Plan.[50] This bankruptcy case traveled up to the District Court and Eleventh Circuit on several appeals, many relating to the dismissal order.[51] But, while the appeals proceeded, two relevant things happened.

First, on July 29, 2013, the same day he filed his adversary proceeding against ROCSA in the Bayou Trust Chapter 7 case, Debtor's husband, Sam Zalloum, filed a virtually identical adversary against ROCSA in his wife's first bankruptcy case but this time referencing the River Village House.[52] Debtor was not a party to the adversary proceeding; Sam Zalloum had no ownership interest in the River Village House and lacked standing to contest ROCSA's actions. During the litigation, however, Mr. Zalloum conducted a firestorm of discovery,[53] sought summary judgment,[54] and asked the Bankruptcy Court to enjoin the pending state court foreclosure action.[55] Because the Plaintiff, Mr. Zalloum, had no ownership interest in the River Village House, the adversary proceeding was dismissed for lack of jurisdiction because I could not resolve claims between the non-debtor parties—ROCSA and Sam Zalloum.[56] Debtor consented and participated in her husband's abusive efforts to use her bankruptcy case to provide a new forum for him to

---

[50] Doc. No. 249 in Case No. 6:13-bk-04030-KSJ (entered March 6, 2015).
[51] *See, e.g.,* Case No. 6:15-cv-404-Orl-40 in the United States District Court for the Middle District of Florida (appeal of Order Dismissing Case in 6:13-bk-04030-KSJ); Case No. 16-10761-CC in the United States Court of Appeals for the Eleventh Circuit (appeal of Order Dismissing Case in 6:13-bk-04030-KSJ). The Eleventh Circuit remanded to the District Court because the Bankruptcy Court had not ruled on a Motion for Reconsideration of the Order Dismissing Case. The District Court then remanded to the Bankruptcy Court to rule upon the Motion for Reconsideration. Doc. No. 291 in Case No. 6:13-bk-04030-KSJ. The Motion for Reconsideration was denied. Doc. No. 296 in Case No. 6:13-bk-04030-KSJ. That Order was also appealed to the District Court. The District Court affirmed the Bankruptcy Court's Order. *See* Case No. 6:17-cv-561-Orl-40 in the United States District Court for the Middle District of Florida. A copy of the District Court's Order is on the Bankruptcy Court's docket. Doc. No. 331 in Case No. 6:13-bk-04030-KSJ (Entered February 1, 2018). Debtor also sought appellate review of an Order Granting Motion for Relief from Stay. Case No. 6:17-cv-881-Orl-41 in the United States District Court for the Middle District of Florida. The District Court dismissed that appeal because the Bankruptcy Court had dismissed the Debtor's case. Doc. No. 333 in Case No. 6:13-bk-04030-KSJ (entered July 2, 2018).  There are at least two pending appeals before the Eleventh Circuit Court of Appeals involving the Debtor's first bankruptcy case (Case No. 18-10626 and Case No. 18-14725).
[52] Adversary No. 6:13-ap-00127-KSJ. Paragraph 14 of the Complaint (Doc. No. 1) references the River Village House at issue in this Memorandum Opinion.
[53] Doc. Nos. 9, 28, 29 in Adversary No. 6:13-ap-00127-KSJ.
[54] Doc. No. 43 in Adversary No. 6:13-ap-00127-KSJ (filed March 24, 2014).
[55] *Id.*
[56] Doc. No. 70 in Adversary No. 6:13-ap-00127-KSJ (Entered April 24, 2014).

litigate with ROCSA. For example, she filed an affidavit to support Mr. Zalloum's motion for summary judgment.[57]

Second, Debtor fully, fairly, and finally litigated all issues between herself and ROCSA relating to the River Village House in her first bankruptcy case. She objected to ROCSA's Claim 5 and lost her arguments[58] after a full trial.[59] Debtor's objection to ROCSA's claim in her first bankruptcy case raised two main grounds: (1) ROCSA lacked standing to assert the claim, and (2) the Debtor had paid the claim. After considering the evidence, testimony, and parties' arguments, the Court made these findings in overruling the Debtor's objection to ROCSA's claim:

- ROCSA is and was the correct association to issue monthly assessments to the Debtor related to the River Village House.[60]
- ROCSA and River Oaks III are homeowners' associations.[61]
- ROCSA could charge collection costs, late fees, and interest on the past due assessments.[62]
- Debtor was not current in the payments of assessments to ROCSA at any point after December 31, 2008.[63]
- ROCSA had a valid claim of lien encumbering the River Village House for unpaid assessments, boat slip fees, interest, attorney's fees, and late fees.[64]
- As April 23, 2013, the date the Debtor filed her first bankruptcy case, the Debtor owed ROCSA $28,066.56.[65]
- ROCSA's claim was not fraudulent or overstated.[66]

---

[57] Doc. No. 56 in Adversary No. 6:13-ap-00127-KSJ (Filed March 24, 2014).
[58] In the First Bankruptcy, ROSCA's claim was Claim No. 5. The Objection to ROSCA's claim was at Doc. No. 159 in Case No. 6:13-bk-04030-KSJ. The Court rendered its oral ruling on November 18, 2014. The Order sustaining the Objection was entered at Doc. No. 233 in Case No. 6:13-bk-04030-KSJ. The transcript of the hearing with the Court's full oral ruling is at Doc. No. 263 in Case No. 6:13-bk-04030-KSJ.
[59] Doc. No. 201 in Case No. 6:13-bk-04030-KSJ. The hearing was held on October 10, 2014.
[60] Doc. No. 263, p. 8 in Case No. 6:13-bk-3040-KSJ.
[61] This finding was made in another case, too, and affirmed by the District Court. The other case involved the Debtor's husband Sam Zalloum. *See* Doc. No. 101, pp. 4-6.
[62] Doc. No. 263, p. 8 in Case No. 6:13-bk-3040-KSJ.
[63] *Id.* at p. 6.
[64] *Id.* at pp. 8-9.
[65] *Id.* at p. 9. ROCSA now claims $95,612.19, attributable to the assessments and costs arising between the filing of the first bankruptcy (April 13, 2013) and the date this bankruptcy case was filed (April 10, 2017). Debtor's filings raise no legitimate factual dispute that ROCSA was owed less than $95,612.19 on the date this second bankruptcy case was filed. Summary judgment in favor of ROCSA is appropriate with the reservation that the Florida state court later may assess a higher amount, given this second case was filed almost two years ago. The assessed lien likely has increased substantially from the amount requested in ROCSA's Claim 2-1 because two additional years have passed.
[66] Doc. No. 263, p. 9 in Case No. 6:13-bk-3040-KSJ.

After evaluating the issues raised and resolved in the Debtor's first bankruptcy with those now asserted in this adversary proceeding, all four prongs of the federal *res judicata* test are met. The prior decision was rendered by this court, a court of competent jurisdiction. The prior decision is final.[67] The parties are the same.

On the identity of the causes of action, Debtor's objections to ROCSA's claim (Counts 4 and 5 of the Amended Complaint) are virtually identical to the objections in the first bankruptcy case.[68] For example, the Amended Complaint alleges ROCSA and River Oaks III lack standing, that the claims are "false," that ROCSA and Wean & Malchow "waived" tender of the assessments forever, and that ROCSA's lien (and River Oaks III's lien, if any) should be voided. The Complaint again questions whether ROCSA is a qualified homeowner's association. These issues were finally resolved in the earlier case. The facts and claims asserted in Counts 3, 6, and 9 of the Amended Complaint originate from the same nucleus of operative fact as the prior proceeding. Debtor wants this Court to decide the exact same issues previously and finally decided in 2014. *Res judicata* acts to stop shenanigans like this

Relying on the principles of *res judicata*, ROCSA's motions for summary judgment[69] are granted on Counts 3, 4, 5, 6, and 9 of the Amended Complaint. Debtor's motions for partial summary judgment on Counts 3, 4, 5, 6, and 9 are denied.[70] Debtor's objections to the claims filed by ROCSA and River Oaks III are overruled.[71] ROCSA is a homeowner's association entitled to issue periodic assessments against the River Village House; may charge late fees and interest on

---

[67] Debtor appealed this Court's ruling. Doc. No. 253 in Case No. 6:13-bk-3040-KSJ. The appeal was dismissed (Doc. No. 306 in Case No. 6:13-bk-3040-KSJ) making the ruling from this Court final. *United States v. Merrill Lynch Commercial Fin. Corp.*, No. CIV.A. 08-5713 (SRC), 2010 WL 3040041, at *3 (D.N.J. Aug. 4, 2010) (when appellate court dismissed appeal, the underlying decision became "absolutely final"). Similarly, on April 5, 2013, a Florida state court entered a final judgment against Sam Zalloum stating ROCSA had a lien on the River Village House. Doc. No. 89, Exh. 15. The Florida state court could not enter a judgment against Julie Zalloum because she had filed a bankruptcy case.
[68] Doc. No. 159 in Case No. 6:13-bk-3040-KSJ (multiple objections were filed but the Court ruled on this one).
[69] Doc. Nos. 89 and 94.
[70] Doc. Nos. 174, 175, 176, and 179.
[71] Count 4 of the Amended Complaint (Doc. No. 23) and Doc. No. 45 in the Main Case 6:17-bk-2329-KSJ.

past due assessments; may recover the costs of collection; is allowed its Claim 2-1 for $95,612.19; and has a valid and enforceable lien encumbering the River Village Property for unpaid assessments. Similarly, Debtor's objection to Claim 3-1 of River Village III is overruled.[72] Claim 3-1 is allowed for $459.63.

### Counts 1, 2 and 7 are Dismissed for Failing to State a Claim

On the remaining counts against ROCSA, Counts 1, 2 and 7, Debtor fails to state a claim. Rule 12(b)(6) provides that before an answer is filed a defendant may seek dismissal of a complaint that fails to state a claim.[73] Disposition of a motion to dismiss under Rule 12(b)(6) focuses only upon the allegations and whether those allegations state a claim for relief. In reviewing a motion to dismiss, courts must accept the allegations as true and construe them in the light most favorable to the plaintiff.[74]

Rule 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[75] Rule 8(a)(3) requires a "demand for judgment for the relief the pleader seeks."[76] Rule 8(a) is premised on the notion that a defendant must be given fair notice of what "the claim is and the grounds upon which it rests."[77] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusations."[78]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

---

[72] Count 5 of the Amended Complaint (Doc. No. 23).
[73] Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012.
[74] *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007).
[75] Fed. R. Civ. P. 8(a)(2), made applicable by Fed. R. Bankr. P. 7008(a).
[76] Fed. R. Civ. P. 8(a)(3).
[77] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted).
[78] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 173 L. Ed. 2d 868 (2009).

action will not do."[79] For a complaint to survive a motion to dismiss, it must contain enough factual matter to "state a claim to relief that is plausible on its face."[80] Facial plausibility is present "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[81]

Courts routinely allow amendments to complaints dismissed for failure to state a claim, particularly for *pro se* parties; however, when amendment is futile, dismissal with prejudice is merited.[82] The Court is mindful that the Debtor is *pro se* and afforded her every leniency and benefit of the doubt. But the typical leniency afforded to *pro se* parties "does not give a court license to serve as *de facto* counsel for a party … or to rewrite an otherwise deficient pleading in order to sustain an action."[83] Debtor moreover already was given an opportunity to file an amended complaint. Further amendment is not justified.

### **Count 1 – Civil Conspiracy Against ROCSA**

Debtor asserts a claim for "civil conspiracy to commit fraud" against the ROCSA related Defendants in Count 1. Debtor generally references "fraud," so, the underlying tort alleged is common law fraud. To state a claim for civil conspiracy, the Plaintiff must allege: "(1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy."[84]

---

[79] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (internal citations omitted).
[80] *Ashcroft v. Iqbal*, 556 U.S. at 677-78 (citing *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).
[81] *Id.*
[82] *Dragash v. Fed. Nat'l Mortg. Ass'n*, No. 16-12123, 2017 WL 2859508, at *6 (11th Cir. July 5, 2017) ("Nor do we find error in the denial of leave to amend based on futility. While leave to amend ordinarily should be freely given, a district court need not grant even a *pro se* plaintiff leave to amend where amendment would be futile."); *LaCroix v. W. Dist. of Kentucky*, 627 F. App'x 816, 819 (11th Cir. 2015), *cert. dismissed sub nom. LaCroix v. U.S. Dist. Court for W. Dist. of Kentucky*, 136 S. Ct. 996, 194 L. Ed. 2d 2 (2016) (the court "need not allow amendment where a more carefully drafted complaint could not state a claim and is, therefore, futile").
[83] *GJR Investments, Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Kabbaj v. Obama*, 13-14748, 2014 WL 2619677, at *4 (11th Cir. June 13, 2014).
[84] *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 343 (Bankr. S.D. Fla. 2013).

Under the common law, "[b]ecause civil conspiracy alone is not an independent tort, the [Debtor] must properly allege the elements of civil conspiracy and the elements of common law fraud in order to state an actionable claim for civil conspiracy."[85] "The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement."[86]

Count I of the Amended Complaint states Defendants "have conspired with others and taken action to attempt the lawful act of foreclosure by unlawful means … Defendants intended to defraud [the Debtor and the Court] by using surrogate signed evidence of standing and materially false claim of lien. [Defendants conspired] to interfere with the judicial system's ability impartially to adjudicate this matter by unfairly filing false proofs of claims, false claim of lien in an attempt to assert standing it does not have in this case [and] prior cases … and Debtor has suffered damages."[87] That is the entire claim. Debtor fails to allege essential elements of common law fraud and civil conspiracy. Count 1 fails to state a claim as a matter of law.

### Count 2 – RICO Claim Against ROCSA

In Count 2, Debtor asserts the ROCSA related Defendants have violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO).[88] "[T]o prove a RICO claim, a plaintiff must show: '(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.'"[89] Debtor fails to plead these elements in her Amended Complaint. And,

---

[85] *Id.*
[86] *Id.* at 344.
[87] Doc. No. 23, p. 13.
[88] 18 U.S.C. §§ 1961 *et seq.*
[89] *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp. 2d 1146, 1156 (M.D. Fla. 2006).

"[b]are suspicion, perception, opinion, and belief" is not enough.[90] Debtor has not pled or provided any evidence beyond mere speculation that the Defendants agreed to any unlawful scheme or committed any RICO violation. Count 2 fails to state a claim as a matter of law.

### **Count 7 – 105 Sanctions Against ROCSA**

Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to "'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'"[91] "'[T]he plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative, or punitive, as long as it is 'necessary or appropriate' to carry out the provisions of' the Bankruptcy Code.'"[92] As the party seeking sanctions against ROCSA, the Debtor carries the burden of showing why sanctions are justified.[93] Debtor here requests monetary sanctions against the ROCSA related Defendants because of their "egregious" conduct and for "filing false fabricated documents" with the Court.

"While § 105 does empower a Bankruptcy Court to address wrongful conduct through contempt proceedings, it only permits monetary sanctions to be awarded to the extent they are 'necessary or appropriate to carry out the provisions' of the Bankruptcy Code."[94] Bankruptcy Courts "may only impose sanctions for contempt that are coercive and not punitive."[95] To determine whether a sanction is coercive or punitive, the court asks "(1) whether the award directly serves the complainant rather than the public interest, and (2) whether the contemnor may control the extent of the award."[96] If the sanction being sought is primarily monetary damages and the

---

[90] *Astro Tel, Inc. v. Verizon Fla., LLC,* 979 F. Supp. 2d 1284, 1295–96 (M.D. Fla. 2013) (quoting *LaRoche v. Denny's, Inc.*, 62 F.Supp.2d 1366, 1371 (S.D.Fla.1999)).
[91] *In re Rhodes*, 563 B.R. 380, 387 (Bankr. M.D. Fla. 2017) (quoting *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996)).
[92] *Id.* (quoting *In re Jove Eng'g, Inc.*, 92 F.3d 1539, 1554 (11th Cir. 1996)).
[93] *In re Brown*, Case No. 6:05-bk-15294-ABB, 2009 WL 10633429 at *7 (Bankr. M.D. Fla. Feb. 19, 2009).
[94] *Id.*
[95] *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389-90 (11th Cir 1996).
[96] *Id.*

conduct already has occurred so the sanctioned party cannot alter their conduct and control the sanction, then "the court may not order such monetary damages, as they are punitive and not coercive."[97] "A Bankruptcy Court may [also] invoke its statutory powers of [§] 105(a) to redress Rule 9011 violations, bad faith, and unreasonable, vexatious litigation."[98]

Debtor's allegations in Count 7 request monetary damages for ROCSA's prior alleged bad actions. Debtor seeks sanctions to punish ROCSA, which is not permitted under § 105. Debtor fails to state a claim for sanctions against ROCSA as a matter of law. The Court also would buttress this holding under the *res judicata* analysis discussed above because the Court already has determined ROSCA is not guilty of any fraudulent or sanctionable conduct.

Debtor's Motions for Partial Summary Judgment on Counts 1, 2, and 7 fail to fix the problems with the allegations in the Amended Complaint.[99] Debtor's Motions raise more meritless arguments, fantastical "facts," and speculation. Debtor's Amended Complaint *still* fails to state a claim in Counts 1, 2, and 7. Any amendment would be futile.

To summarize:

- ROCSA's Motions for Summary Judgment (Doc. Nos. 89, 94) are **GRANTED.**

- Debtor's Motions for Partial Summary Judgment (Doc. Nos. 174, 175, 176, 177, 178, 179) are **DENIED.**

- Counts 3, 4, 5, 6, and 9 are dismissed under the doctrines of *res judicata* and collateral estoppel.

- Counts 1, 2, and 7 are dismissed with prejudice for failure to state a claim.

---

[97] *In re Brown*, 2009 WL 10633429, at *7 (quoting *In re Hardy*, 97 F.3d at 1389-90).
[98] *In re Evergreen Sec., Ltd.*, 384 B.R. 882, 932 (Bankr. M.D. Fla.), aff'd, 391 B.R. 184 (M.D. Fla. 2008), aff'd, 570 F.3d 1257 (11th Cir. 2009).
[99] Doc. Nos. 174 (Counts 1 and 2), Doc. No. 177 (Count 7).

A separate consistent partial final judgment consistent with this Memorandum Opinion shall issue.

###

The Clerk is directed to serve a copy of this memorandum opinion on interested parties.